1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| R.Z.C., by and through his parents,<br><br>DAVID C. and DIANNA C.,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHSHORE SCHOOL DISTRICT,<br><br>Defendant. | No. 2:16-cv-01064-TSZ<br><br>Plaintiff's Motion for Partial Summary Judgment<br><br>(Judgment on the Administrative Record)<br><br>NOTE FOR MOTIONS CALENDAR:<br>July 21, 2017 |

**MOTION FOR SUMMARY JUDGMENT**

**COMES NOW Plaintiff ("**R.Z.C.**")** by and through his parents, David C. and Dianna C.

("Parents"), seeking Judgment on the Administrative Record in Office of the Superintendent of

Public Instruction (through the Office of Administrative Hearings) Consolidated Cause Nos.

2015-SE-0094 and 2016-SE-0001 pursuant to the Individuals with Disabilities Education Act, 20

Plaintiff's MSJ  - 1
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

U.S.C. 1400 *et. seq.*, and the implementing federal regulations, 34 C.F.R. Part 300 (collectively referred to herein as the "IDEA").

## MEMORANDUM OF POINTS AND AUTHORITIES

### ISSUES ON REVIEW

I.  Whether the hearing officer erred in finding the District did not deny R.Z.C. a Free, Appropriate, Public Education ("FAPE") by exiting R.Z.C. from special education on of the basis of the May 8, 2015 evaluation;

II. Whether the hearing officer erred in finding R.Z.C. ineligible for special education under the IDEA;

III. Whether the hearing officer erred in denying R.Z.C. access to an Independent Educational Evaluation ("IEE") at public expense; and

IV. Whether the hearing officer erred in denying R.Z.C. relief.

### RELIEF REQUESTED

R.Z.C. seeks a reversal of the underlying administrative decision and a ruling that R.Z.C. is a child with disability eligible for special education under the classification of Specific Learning Disability ("SLD").  R.Z.C. further seeks a ruling that he is entitled to an IEE and a remand to the administrative tribunal to present evidence and develop a record necessary to develop an appropriate prospective Individual Education Plan "IEP" and a compensatory educational program given the passage of time since the due process request was filed.

### SUMMARY OF FACTS

At the beginning of  the 2014-2015 school year, a conflict arose between Parents and the District.  Parents eventually requested an IEE in response to the District's January 2013 evaluation which the District granted.  *Administrative Decision*, AR 00006, FOF[1] 2.  In January

---

[1] Finding of Fact

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

2015, the agreed upon IEE provider, Dr. Jennifer Blair, neuropsychologist, evaluated R.Z.C.  *Id.*, *Jan. 2015 IEE*, AR 01125, **Exhibit 1**.  At that same time, Parents enrolled R.Z.C. in remedial tutoring with Katherine Jewell, a certified master level educator.  *Testimony of Jewell*, AR 00610, **Exhibit 12**.

Based on the IEE results, Dr. Blair concluded that R.Z.C. continued to qualify for services under the Washington Administrative Code due to a disorder of Written Expression and an adverse impact that presented as a severe discrepancy in Written Expression as measured by the Woodcock Johnson III ("WJ-III") "basic writing skills" subtest and the Test of Written Language- third edition ("TOWL").  *Jan. 2015 IEE*, AR 01130-31, 01134, **Exhibit 1**.  Based on the IEE, the District modified the adverse impact statement in R.Z.C.'s IEP to reference basic writing skills such as "spelling, grammar, word usage, conventions, and punctuation," and modified his goals to include a goal specific to basic writing skills.  *Feb. 2015 IEP*, AR 01154-56, **Exhibit 7**. The District issued Prior Written Notice ("PWN") to implement the modifications on April 1, 2015.  *Id.* at 01162-63.   That PWN did not document any concern with the appropriateness of any measure Dr. Blair used in determining R.Z.C. presented with a severe discrepancy or make any indication that basic writing skills such as spelling, grammar, word usage, conventions or punctuation were no longer considered a component of Written Expression. *Id.*

In a separate PWN, issued on March 16, 2015 the District proposed and described procedures for a District evaluation that included a record review to consider Dr. Blair's evaluation.  *Mar. 2015 re-evaluation notification/consent*, AR 01182-83, **Exhibit 8.** This PWN also failed to inform the Parents of any concern the District had with the appropriateness of any

Plaintiff's MSJ  - 3
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

measurement Dr. Blair's used or that the District did not consider basic writing skills to be a component of Written Expression. *Id.* The Parents had no reason to believe the District would reject any of the assessments from the IEE including the WJ-III "basic writing skills" subtest and the TOWL.

From his initial eligibility in 2010 up until the May 8, 2015 eligibility meeting, the District provided R.Z.C. with special education under the category Written Expression.  The District had always considered R.Z.C.'s continued struggles with  basic writing conventions, grammar, spelling and the use of written language to fall under the category of Written Expression. *See 2010 Initial Evaluation*, AR 01477, 01479, **Exhibit 2**; *Feb. 2010 IEP*, AR 01470-71, **Exhibit 3**; Feb. 2012 IEP, AR 01408-10; **Exhibit 4**; *Jan. 2013 IEP,* AR 01422-24, **Exhibit 5**; *Jan. 2014 IEP*, AR 01440-41, **Exhibit 6**; *Feb. 2015 IEP,* AR 01153-01156, **Exhibit 7**. Despite these difficulties, even with the mitigating effect of on-going, intensive, one-on-one SDI in Written Expression in tandem with compensatory education provided by Parents, on May 8, 2015--six weeks after the District issue PWN confirming an adverse impact in Written Expression based on Dr. Blair's evaluation--the District exited R.Z.C. from special eduction using the same evaluation data and stated that there was no longer an adverse impact or a need for special education.  *May 2015 Evaluation Report*, AR 01186, 98, **Exhibit 9**. Neither the evaluation report nor the  PWN issued May 8, 2015, document the rejection of any measurement used by Dr. Blair to determine a severe discrepancy or the rejection of Dr. Blair's conclusion that R.Z.C. presented with a severe discrepancy in Written Expression and was in need of special education.  *Id.,generally.*

Plaintiff's MSJ  - 4
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

Parents disagreed with the District exiting R.Z.C. from special education and on October 19, 2015, they filed due process hearing request OSPI Cause No. 2015-SE-0094.  In January 2016, the District filed due process hearing request OSPI Cause No. 2016-SE-0001, to defend the appropriateness of the May 8, 2015 evaluation.  OAH, on behalf of OSPI, held a consolidated hearing in January 2016.  At the hearing, and for the first time, the District testified that it rejected the results of the WJ-III "basic writing skills" subtest and the TOWL in determining R.Z.C.'s ongoing eligibility because neither measure is specifically delineated in the OSPI guidelines for determining Specific Learning Disabilities. Yet the guidelines specifically state they are non-exhaustive.  The District alternately argued that, basic writing skills are not a component of Written Expression despite providing R.Z.C. special education in basic writing skills due to a SLD in Written Expression since his initial eligibility in 2010.

The hearing officer issued a decision on April 13, 2016, ultimately finding that the May 8, 2015 reevaluation was appropriate, that any defects in R.Z.C.'s reevaluation did not deny him a FAPE, and that the District's exiting of R.Z.C. was correct. *Administrative Decision*, AR 00026.  The hearing officer dismissed the remaining issues as moot and denied the Parents their requested relief.  *Id.* R.Z.C. timely filed for judicial review to appeal the hearing officer's decision and timely submits this Motion for Summary Judgment.

## APPLICABLE STANDARDS

### I.  Nature of Judicial Review:

Ordinarily, a court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).  When reviewing an administrative decision under the IDEA,

Plaintiff's MSJ  - 5
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

however, the court is not bound by the normal rules of summary judgment. *J. S. v. Shoreline Sch. Dist.*, 220 F. Supp. 2d 1175, 1184 (W.D. Wash. 2002) (citing *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993)).  "In any action brought under 20 U.S.C. § 1415(i)(2), the court: (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1414(i)(2)(C).  Accordingly, an appeal from an IDEA administrative hearing, though labeled a motion for summary judgment, "is in substance an appeal from an administrative determination, not a summary judgment." *Capistrano Unified School District v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995), and is treated essentially as a "bench trial based on a stipulated record." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993), cert. denied, 513 U.S. 825, 115 S.Ct. 90 (1994).

## II. The standard of review for administrative findings of facts is modified *de novo* where the hearing officer's finding are accorded deference if they are thorough and careful.

Review of administrative findings is modified *de novo*.  Under a modified *de novo* review, the court is free to accept or reject the administrative findings in part or in whole but must give them due deference. *Capistrano*, at 891, citing *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994).  The extent of deference, however, is within the court's discretion, based on whether the administrative findings are "thorough and careful."  See, e.g., *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310-11 (9th Cir. 1987); *accord Hendrick Hudson Cent. Sch. Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982).  Findings are thorough and careful "when the officer participates in the questioning of

Plaintiff's MSJ   - 6
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

1
2
3 witnesses and writes a decision containing a complete factual background as well as a discrete
4 analysis supporting the final conclusions." *R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496
5 F.3d 932, 942 (9th Cir. 2007).
6
7   **A. The hearing officer's decision should be accorded minimal deference because it is not**
8     **through and careful.**
9       The hearing officer glossed over or completely omitted discussion of considerable factual
10 evidence that contradicts his findings.  For instance, among other unacknowledged evidence, the
11 decision fails to consider or make any findings of fact regarding the testimony of  Ms. Kier, a
12 certified masters level teacher with an endorsement in special education that R.Z.C.'s writing
13 was below state standards for his age and that his letter grades appeared to be based on modified
14 standards. *See, Testimony of Kier*,  A.R. 01025, **Exhibit 11**.  The hearing officer also failed to
15 make findings of fact regarding testimony from Ms. Jewell, R.Z.C.'s private tutor and certified
16 masters level teacher with an endorsement in 4-12 English that R.Z.C. is well below grade level
17 in spelling, grammar, and conventions and that the use of assistive technology alone is not
18 sufficient to remediate his deficiencies and that he needed continuing special education in
19 writing. *Testimony of Jewell*, AR 00623-26; 00644, **Exhibit 12**.
20
21       The hearing officer also failed to address evidence that the District itself considers basic
22 writing skills to be a component of Written Expression. For example, R.Z.C.'s most recent
23 special education teacher provided R.Z.C. special education in Written Expression focused on
24 conventions and mechanics. *Testimony of Sutton*, A.R. 00791-93, 00806, **Exhibit 14**.  Moreover,
25 the hearing officer did not address that R.Z.C.'s IEP each year since 2010 provided R.Z.C. with
26 special education in basic writing skills such as grammar, spelling, and the use of conventions

Plaintiff's MSJ  - 7
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

under the area Written Expression.  Furthermore, the hearing officer explicitly refused to consider substantial and compelling circumstantial evidence and made no finding of fact regarding this category of evidence.

The hearing officer failed to identify the factual background and reasoning for credibility determinations.  In lieu of specific credibility determinations the hearing officer made a blanket introductory statement explaining that, "[t]o the extent a Finding of Fact adopts one version of a matter on which the evidence is in conflict, the evidence adopted has been determined more credible that the conflicting evidence."  But the hearing officer must explain his reason for finding one witness or one set of facts more credible than another so the parties and any reviewing court can assess the validity of the hearing officer's reasoning and the basis for his determinations.  *Dept. of Educ., State of Hawaii, v. Rita L. by and through her Parent, Rita L.*, 2014 WL 7184217 at 6, (District Court, Hawaii, 2014).  The hearing officer's blanket statement contains no analysis for the parties to respond to nor for the court to review.

Additionally, the administrative decision is internally inconsistent.  The hearing officer used the WJ-III "basic writing skills" subtest and the TOWL to justify the appropriateness and comprehensiveness of the District's evaluation while simultaneously rejecting the two assessments as not valid or appropriate for determining R.Z.C.'s eligibility for special education services.  The hearing officer's use of the two tests as both a sword and a shield in the District's favor is inconsistent.

Given the hearing officer's failure to provide a complete factual background, his failure to provide much of any analysis supporting his conclusions, and the internal inconsistencies in the decision, the administrative decision is deserving of *de minimus* deference from the Court.

Plaintiff's MSJ  - 8
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

1
2
### III. The standard of review of governing administrative conclusions of law is *de novo*.

Conclusions of law or mixed questions of fact and law are reviewed *de novo* unless the mixed question is primarily factual. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310 (9th Cir. 1987).  The party challenging an administrative decision, here R.Z.C., bears the burden of proof.  *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted).

### ARGUMENT

In reviewing administrative decisions under the IDEA, the court reviews for (1) procedural compliance with the statute, and (2) substantively whether the program is reasonably calculated to enable the student to receive educational benefit.  *Capistrano Unified Sch. Dist. v. Wartenberg through Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995).

### I. The hearing officer erred in finding the District did not procedurally deny R.Z.C. a FAPE when it exited him from special education on May 8, 2015.

While the hearing officer correctly concluded that the District's evaluation did not conform to the procedural requirements of the act by failing to provide a complete evaluation report, the hearing officer erred in determining the procedural deficiencies did not rise to the level of a denial of FAPE.  See *Administrative Decision,* AR 00023. The hearing officer also erred in finding the District complied with other procedural requirements of the act.

Washington State regulations implementing the IDEA require districts to provide a FAPE to all eligible students between the ages of three and twenty-one.  WAC 392-172A-02000.  A FAPE is provided through an IEP based on an appropriate evaluation.  WAC 392-172A-01080.

Plaintiff's MSJ  - 9
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

1
2
3    Once a student has eligibility for special education that student remains eligible until he

4    graduates, ages out, the parent revokes consent, or it is determined based on a re-evaluation the

5    student is no longer eligible special education services. WAC 392-172A-02000.  It is uncontested

6    that R.Z.C. met the IDEA eligibility requirements and received services from the District through

7    an IEP until the District's eligibility determination on May 8, 2015.  *District's Answer*, AR

8    00326, **Exhibit 16**.  The District therefore, must evaluate R.Z.C. in accordance with WAC

9    392-172A-03020 through 392-172A-03080 before determining he is no longer eligible. *See*

10   WAC 392-172A-03030. Here, the District did not evaluate R.Z.C. in accordance with the

11   enumerated regulations.

12
13       *A.*   **The hearing officer erred in finding the District provided adequate Prior Written**
             **Notice in accordance with WAC 392-172A-03020.**

14
15           The District was required to provide the Parents with PWN describing any evaluation

16   procedure the District proposed that included, among other things, a description of the action

17   proposed or refused by the district and an explanation of why the District proposed that action

18   together with a description of other options that the IEP team considered and the reasons why

19   those options were rejected. See WAC 392-172A-03020, 05010.

20           The District provided PWN  dated March 16, 2014 and April 1, 2014, but both fail to

21   document the District's rejection of and refusal to consider the results of the WJ-III-"basic

22   writing skills" subtest and the TOWL.  *Feb.2015 IEP*, AR 01162-63, **Exhibit 7**, *Reevaluation*

23   *Notification/Consent*, AR 01182, **Exhibit 8.** The District also failed to indicate its rejection of

24   and refusal to consider these assessments in PWN issued after the evaluation process (*May 2015*

25   *Evaluation Report*, AR 01198, **Exhibit 9**), in the evaluation report itself (*Id. generally*), and in

Plaintiff's MSJ  - 10
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

the Answer to the Parents' Due Process Complaint (*District's Answer*, A.R. 00325-00328, **Exhibit 16**). This left Parents in the dark regarding the assessments the District used and rejected in its evaluation until it was revealed at the Due Process hearing held 8 months after the District exited R.Z.C.

**B. The hearing officer erred in finding the District assessed R.Z.C. in all areas of suspected disability through an evaluation sufficiently comprehensive to identify all of his educational needs.**

The evaluation of R.Z.C. must include relevant information that is sufficiently comprehensive to identify all of his educational needs. WAC 392-172A-03020(3)(e), (f), and (g). The hearing officer found the District's evaluation to be comprehensive based on Dr. Blair's testimony that her IEE was comprehensive without consideration to fact that the District rejected the measurements Dr. Blair used to assess R.Z.C.'s spelling, conventions, and use of written language on works beyond the sentence level.  By rejecting the WJ-III and TOWL, the only measurements that assessed R.Z.C.'s basic writing skills or his ability to compose written works beyond the sentence level, the District compromised the comprehensiveness of its evaluation thereby failing to provide information relevant and useable to R.Z.C.'s skills in known areas of weakness.

The hearing officer also failed to consider any evidence that a motor evaluation alone would not be comprehensive enough to identify R.Z.C.'s educational needs relative to his handwriting where the District evaluation relied solely on motor ability in assessing R.Z.C.'s handwriting.  *Administrative Decision*, AR 00020. Dr. Blair testified that R.Z.C.'s handwriting was extremely difficult to decipher.  *Testimony of Blair*, AR 00935, **Exhibit 15**, and that she did not attribute his difficulties with handwriting to a motor disfunction, but rather to a language

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

1
2
3 processing and/or working memory issue.  *Id.*,AR 00941, 00953, **Exhibit 15**. At no point in the
4
5 evaluation of R.Z.C. did the District consider any alternative to R.Z.C.'s handwriting to anything
6
7 other a motor issue.  This impacted the comprehensiveness of the District evaluation and left the
8 question of  R.Z.C.'s need for instruction in handwriting due to anything other than a motor
9 disfunction unaddressed.

**C. The hearing officer erred in finding the District drew upon information from a variety of sources in making its eligibility determination and ensured that information obtained from these sources was documented and carefully considered.**

The District is required to "draw upon information from a variety of sources" and to ensure that information obtained from all of these sources is "documented and carefully considered." WAC 392-172A-03040. The District only used the information from the WJ-III written expression subtest in determining R.Z.C.'s eligibly without consideration of his scores on the WJ-III "basic writing skills" subtest or the TOWL. If this information is to be taken into account when determining the comprehensiveness of the District's evaluation it must also be taken into consideration in making the eligibility determination. Yet the hearing officer rejected these measures as inappropriate for determining R.Z.C.'s eligibility.

**D. The hearing officer erred in finding Parents were provided with a written evaluation report that conformed to the requirements of the WAC.**

The District was required to prepare a written report that includes a discussion of the data that supports the eligibility determination,  a statement of whether R.Z.C. has a SLD, the basis for that determination, and a statement of whether he does not achieve adequately for his age or meet state grade level standards in an area identified by WAC 392-172A-03055(1), and must identify where profession judgment is used. *See*, WAC 392-172A-03035, 03080.  Where the

Plaintiff's MSJ  - 12
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

basis for a district's eligibility determination is not well documented the evaluation is

inappropriate.  *See e.g. Bear Creek*, 112 LRP 49713. *See also*, WAC 392-172A-03040.  The

District's evaluation report provides no relevant discussion of the data it relied on in making the

eligibility determination and provides no indication that any of the documented data was

rejected.  The report fails to indicate the professional judgment to use R.Z.C.'s general ability

index to determine severe discrepancy, R.Z.C.'s criterion score or the District's rejection of Dr.

Blair's assessments and ultimate conclusion.  In short, the District generated an evaluation report

that makes it impossible to understand how the District came to the conclusion that R.Z.C. was

no longer eligible for special education within the parameters of the law.

> **E.  Because the May 8, 2015 reevaluation was not conducted in accordance with the procedures of the act, R.Z.C. could not be exited from special education on the basis of that evaluation.**

The District was required to evaluate R.Z.C. in accordance with the regulations prior to

exiting a student from special education.  *See*, WAC 392-172A-03030. Here, as shown above, the

reevaluation was not done in accordance with the act.  Therefore, the District could not exit

R.Z.C. from special education on May 8, 2015.

> **F.  The procedural violations during the evaluation process impeded R.Z.C's right to a FAPE and significantly impeded parental participation thereby denying R.Z.C. a FAPE.**

Procedural violations amount to a denial of a FAPE where the violations: (1) impede a

student's right to a FAPE, (2)significantly impede the parents' opportunity to participate in the

decision making process, or (3) cause a deprivation of educational benefits.  WAC

392-172A-05105.  The District's procedural violations impeded R.Z.C.'s right to a FAPE by

Plaintiff's MSJ  - 13
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

erroneously exiting him special education (discussed above),  and also significantly impeded the

Parents' opportunity to participate in the decision making process.

The failure to provide adequate PWN together with providing an insufficient evaluation

report significantly impeded the Parents' ability to participate in the process.  Ninth Circuit law

underscores the importance of adequate PWN.  In *Union School District v. Smith*, 15 F.3d 1519,

1526 (9th Cir. 1994), the Court held the requirement of PWN was "not merely technical" and

"should be enforced rigorously."  The Court explained the "the requirement of a formal written

offer creates a clear record that will do much to eliminate troublesome factual disputes many

years later…and…will greatly assist parents in presenting complaints with respect to any matter

relating to the…educational placement of the child."  *Id.* at 1526 (internal quotations omitted.)[2]

Here, the District withheld its decision to reject R.Z.C.'s scores on the WJ-III "basic

writing skills" subtest and the TOWL, and the reason for rejecting the results to the significant

detriment of Parents.  Ultimately, the District's nondisclosure of its decision to reject these scores

prevented Parents from fully participating in the evaluation process.  Had the District issued

proper PWN alerting the Parents of its alleged concerns, Parents could have requested that the

District substitute those measures with another measure that was expressly approved in the OSPI

guidelines that also tested basic writing skills, such as the WJ-IV.

Moreover, the District's failure to provide a proper evaluation report explaining the

process and the reasoning behind the District's eligibility decision left the parents in the dark as

_____

[2] The Court was referring to to the PWN procedural safeguard in effect in 1994.  Congress strengthened the PWN
requirements in the reauthorization of the IDEA in 2004.

Plaintiff's MSJ  - 14
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

to why the District was exiting R.Z.C. when the IEE they were privy to and on which the record

review was based clearly recommended continuing eligibility.

## II. The hearing officer erred in finding R.Z.C. not eligible for special education as a student with a Specific Learning Disability because a preponderance of the evidence supports continuing eligibility. (Substantive Prong)

Where a procedural violation is found, the substantive standard need not be addressed.

*W.G. v. Target Range Sch. Dist. No. 23, Bd. of Trustees,* 960 F.2d 1479, 1485 (9th Circuit 1992).

However, even if the evaluation was procedurally adequate[3], the District's eligibility

determination still fails under the substantive prong of *Rowley*, 458 U.S. at 201-03.  A student is

eligible for special education when he has a disability in one of the identified eligibility

categories coupled with an adverse educational impact to the extent that the student has unique

needs that require special education.  WAC 392-172A-01035(1)(a).  Substantively, the ultimate

question becomes whether the instruction and services offered to the student "permit the child to

benefit educationally from that instruction."  *See Hood*, 486 F.3d at 1107 (quoting *Rowley*, 458

U.S. at 203).

### A. A preponderance of the evidence shows that R.Z.C. has a disability within the IDEA eligibility category Specific Learning Disability ("SLD").

As reported in PWN, the evidence the District reviewed in determining R.Z.C. eligibility

consisted of: "Private evaluation results provided by Jennifer Blair, PhD., file review,

observations, interview, review of previous and current academic performance, and the results of

statewide standardized testing."  All of this evidence when properly reviewed supports R.Z.C.'s

continuing eligibility.

---

[3]  (And it was not. )

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

### 1. *Dr. Blair's private evaluation results support eligibility*

Dr. Blair's evaluation supports continuing eligibility.  The evaluation revealed a discrepancy between R.Z.C.'s academic achievement and intellectual ability within the OSPI guidelines necessary for determining a severe discrepancy.  *May 2015 IEE*, AR 01134, **Exhibit 1**. Eligibility under the SLD category may be determined where "the student has a severe discrepancy between achievement and intellectual ability" in one or more specifically delineated areas including written expression based on OSPI's published discrepancy tables.  WAC 392-172A-03065, 03055.  It is uncontested that based on the OSPI discrepancy tables R.Z.C. exhibited a severe discrepancy as measured by the WJ-III "basic writing skills" subtest.  R.Z.C. further demonstrated a severe discrepancy on certain subtests of the TOWL.

The hearing officer concluded that because Basic Writing Skills is a not a specific area delineated in the regulations, a finding of a severe discrepancy could not be based on a "basic writing skills" subtest. *Administrative Decision*, A.R. 00025.  This reasoning is contrary to the OSPI guidelines.  OSPI has approved measures with many and divergent names as approved measures including those labeled: "handwriting," "orthographic spelling," "cross genre composition" and "broad written language."  *OSPI Guidelines*, AR 01366, 67, **Exhibit 10**.  None of these subtest names are identical or even close to a specific area delineated in the regulations.[4] Additionally, while Written Expression is not specifically defined in the Washington Administrative Code, the code itself supports the inclusion of basic writing skills such as

_____

[4] The areas listed in WAC-392-172A-03055 are:  Oral expression, listening comprehension, written expression, basic reading skill, reading fluency skills, reading comprehension, mathematics calculation, and mathematics problem solving.

Plaintiff's MSJ  - 16
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

spelling, conventions, grammar, and handwriting by explicitly referencing the use of written

language, writing, and spelling in the definition of SLD. See WAC 392-172A-01035(2)(k)(i).

The hearing officer further found that because the WJ-III itself differentiates between

"written expression" and "basic writing skills" by having separate subtests with those labels,

basic writing skills necessarily are not included in the area of Written Expression.  The hearing

officer, however, has confounded the term "Written Expression," which in one instance means

what the publishers of the WJ-III intend the subtest "written expression" to measure and in the

other instance means what Congress intended in drafting the IDEA and in doing so has arbitrarily

assigned significance to the name of individual subtests without consideration of what those

subtests measure.   A subtests label is not significant, what is significant is the skill the

assessment is designed to evaluate- and here the WJ-III "basic writing skills" subtest

appropriately assessed basic writing which are a component of Written Expression.

The only evidence the District offered to support the inappropriateness of these measure

is the OSPI Guidelines, which do not specifically list these tests.  However the OSPI guidelines

explicitly state in multiple places that the tests in the guidelines are not exhaustive and

supplemental subtests can also be appropriate.  *OSPI Guidelines*, AR 01514, 01522, 01530,

**Exhibit 10**. Dr. Blair testified that the WJ-III "basic writing skills" subtest is appropriate for

determining a child's achievement in the basic writing component of written expression and that

the TOWL is an appropriate assessment for determining a child's achievement in written

expression.  AR here.  Dr. Blair further testified that the use of the TOWL is especially

appropriate for assessing written expression as a supplement to the WJ-III because the TOWL

provides a method to score composition on essay level writing, where as the WJ-III is only

Plaintiff's MSJ  - 17
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

assessing written expression at the sentence level.  HT 543.  Finally, Dr. Blair testified the contextual conventions subtest of the TOWL is comparable to the narrative fluency subtest of the PAL-II, an approved test in the OSPI guidelines.

Additionally, the OSPI guidelines allow for measures that include subtests labeled  "written expression" by the test publisher together with another subtest by a different name that are pre-approved to assess written expression, such as the KTEA-III and the WJ-IV.  *Id.* The KTEA III includes both a subtest labeled "written expression" and a subtest labeled "written language" both of which are approved to determine a SLD.  *Id.*  Similarly, The WJ-IV includes a subtest labeled "written expression" and a subtest labeled "broad written language" both of which are approved to determine a SLD.  *Id.*

Additionally, the rejection of the standard scores on the "basic writing skills" subtests and the TOWL left the District, and the hearing officer, with a single measure on which to hinge R.Z.C.'s eligibly.  This is explicitly forbidden by the act.  The hearing officer failed to balance the lack of severe discrepancy on the "written expression" subtest with other evidence that does indicate an adverse impact.

### 2.   *A review of R.Z.C. previous IEP and evaluations support continuing eligibility.*

and which are areas the District has historically considered a component of Written Expression in serving R.Z.C. under the act.  *See* e.g*., Initial 2010 Evaluation*, AR 01477, 01479, **Exhibit 2**; *Feb. 2010 IEP*, AR 01470-71, **Exhibit 3**; Feb. 2012 IEP, AR 01408-10; **Exhibit 4**; *Jan. 2013 IEP,* AR 01422-24, **Exhibit 5**; *Jan. 2014 IEP*, AR 01440-41, **Exhibit 6**; *Feb. 2015 IEP,* AR 01153-56, **Exhibit 7**.

Plaintiff's MSJ  - 18
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

### 3. *Observations were not conducted in conformance with the requirement of the act and should therefor be construed in favor of the Parent.*

As part of the evaluation process, the District was required to ensure that R.Z.C. was observed in his learning environment to "document [his] academic performance and behavior in the areas of difficulty." WAC 392-172A-03075. Jacque Ter-Veen completed this observation, however, she failed to document or observe his academic performance during the course of the observation. She observed the teacher ask R.Z.C. a question, however another student answered before R.Z.C. provided a response. *May 2015 Evaluation Report*, AR 01196, **Exhibit 9**. Ms. TerVeen directly testified that she did not consider R.Z.C.'s academic performance during her evaluation. *Testimony of TerVeen*, AR 00461, **Exhibit 14**.

### 4. *When correctly viewed in light of the mitigating measures review of previous and current academic performance indicates a need for special education*

It is not unexpected that a child receiving special education will achieve passing grades as this is one measure of the appropriateness of a special education program. *See Rowley*. Therefore, an adverse impact must be found "if the child's educational performance would have been adversely affected but for the specialized instruction that the child was receiving." *Yankton Sch. Dist. v. Schramm*, 93 F.3d 1369, 1375 (8th Cir. 1996). Likewise, a child's grades are not an accurate assessment of a child's progress where they are the result of accommodations. *W.H. v. Clovis Unified Sch. Dist.*, 109 LRP 33364, (ED CA 2009).

Here, R.Z.C.'s grades are the result of special education and other accommodations yet the hearing officer failed to make any findings concerning the mitigating effects of R.Z.C.'s special eduction program and accommodations in achieving those results. Nor did the hearing officer consider the intensity of those services, or the mitigating effect of the compensatory

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

program provided by the Parents.   R.Z.C.'s special education program included "intensive

writing instruction with an emphasis on conventions and mechanics"  provided through 1:1

instruction where sometimes half an hour was dedicated to working through a single paragraph.

*Testimony of Sutton*, AR 00792, 00808, 00806, **Exhibit 13**. Ms. Sutton also allowed R.C.Z. to

read assignments to her when his handwriting was illegible, this was an accommodation that she

often suggested to him.  *May 2015 Evaluation Report*, AR 01192, **Exhibit 9**; *Testimony of*

*Sutton*, AR 00797, **Exhibit 13**. Particular of significane, Ms. Sutton specifically testified that the

support and accommodations she provided has an impact on his grades.  *Testimony of Sutton*,

AR 00977, **Exhibit 13**.

> ### *5.  R.Z.C. Statewide Standardized tested show him as not achieving at standard.*

R.Z.C. did not score at proficient on state standardized testing in writing but only

achieved a "basic" rating.  *May 2015 Evaluation Report*, AR 01191, **Exhibit 9**.

### B.  A preponderance of the evidence shows that accommodations alone will not remediate R.Z.C.'s deficiencies.

In *Endrew F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. ___, slip op. (2017), the Supreme

Court clarified the Rowley standard to require more than *de minimus* progress and a school must

offer a student an IEP reasonably calculated to enable a child make progress appropriate in light

of the child's circumstances.  Informed by *Endrew F.*, the 9th Circuit found schools must

implement an IEP that is reasonably calculated to remediate and, if appropriate, accommodate

the student's disabilities so the student can "make progress in the general education curriculum

commensurate with the student's non-disabled peers, taking into account the student's potential.

*M.C. v. Antelope Valley Union High Sch. Dist.*, 14-56344.

Plaintiff's MSJ  - 20
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

After multiple years of specially designed instruction targeted to address R.Z.C.'s difficulty with written expression, he continues to struggle in his usage of  spelling, grammar, and conventions and exhibits a severe discrepancy in the area of written expression.  The use of accommodations alone would be inadequate for R.Z.C.'s individual needs and not curative or remedial. *Testimony of Blair*, AR 00944-45, **Exhibit 15**.  She further testified that accommodations alone are not adequate for R.Z.C.'s individual needs, and that on a more probably than not basis R.Z.C.'s skill level will not increase without direct instruction. *Testimony of Blair*, AR 00957, 00945, 00969, **Exhibit 15**.  Ms. Jewell also testified the use of assistive technology would not be remedial.  *Testimony of Jewell,* AR 00644, **Exhibit 12**.

**C.  A preponderance of the evidence demonstrates R.Z.C.'s need for special education and eligibility.**

The preponderance of the evidence shows R.Z.C. continues to need SDI in written expression.  First, there is a severe discrepancy between R.Z.C's scores on the WJ-III Basic Writing, the TOWL and his intellectual ability.  Second, R.Z.C.'s basic writing skills are at approximately a fifth grade level.  His use of written conventions are at a third grade level and his handwriting is illegible out of context.A.R. [CITE].  R.Z.C. continues to display deficits in Written Expression despite receiving SDI for the preceding 5 years.  A preponderance of the evidence supports R.Z.C.'s continuing eligibility.

**III.The hearing officer erred in finding  R.Z.C. was not entitled to relief in the form of an Independent Educational Evaluation because the District's evaluation was procedurally inappropriate.**

A parent has a right to request an IEE at public expense if the parent disagrees with an evaluation obtained by the school district.  WAC 392-172A-05005; 34 CFR 300.502(b)(1). When

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

a parent requests an IEE, a school district must agree to provide the IEE to the student or

demonstrate at a hearing that the student's "evaluation is appropriate."  WAC

392-172A-05005(2)(c).  Here, the District initiated a hearing to establish the appropriateness of

its evaluation and bears the burden of showing it conformed to the procedural requirements of

the WAC.  As discussed above, the procedural requirements of the act were not met.

     While the hearing officer found the evaluation to not be appropriate,  he inexplicably

shifted the burden of proof onto Parents to make a showing that the inappropriate evaluation

resulted in a denial of a FAPE.  This is not the standard for requiring an IEE.  It is not where a

there is denial of FAPE that the parent is entitled to an IEE, but where the District's evaluation is

procedurally inappropriate.  Here, the District's evaluation was inappropriate and R.Z.C. is

entitled to an IEE at District expense.

## IV.  R.Z.C. is entitled to relief

     R.Z.C. is entitled to relief for the period of time he was denied a FAPE due to his

improper exit from IDEA services on May 8, 2015 to the present.  He is also entitled to

prospective IEP.   It has been over 2 years since his exit and a record should be developed

at the administrative level for the purpose of informing R.Z.C's current and compensatory

educational needs.

## CONCLUSION

     The hearing officer's Order should be overturned and an IEE should be granted.  The case

should be remanded to the administrative level to develop the record necessary to determine an

appropriate prospective and compensatory education program given the lapse of time between

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796

the original hearing and the present.  Should the Plaintiff prevail in this appeal, he respectfully

requests the Court set a briefing schedule for determination of reasonable attorney's fees and

costs for this appeal and the underlying due process hearings.

Respectfully submitted the 12th day of June 2017.

/s/ *Angela Shapow*

_____

CEDAR LAW, PLLC
Angela Shapow, WSBA #41471
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796
angela@cedarlawpllc.com

CERTIFICATE OF SERVICE

I hereby certify that on June 12th, 2017, I electronically filed the Plaintiff's Motion for Summary
Judgment together with all attachments using the CM/ECF system which will send notification
of such filing to the parties.

/s/ *Angela M. Shapow*

Angela M. Shapow, attorney for Plaintiff

Plaintiff's MSJ   - 23
Cause No: 2:16-cv-01064-TSZ

**Cedar Law, PLLC**
2200 6th Ave. #1250
Seattle, WA 98121
206-250-5796